# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION
### 5:16-cv-228-FDW

| | |
|---|---|
| BRICE C. MOORE, ) | |
|       Plaintiff, ) | |
| vs. ) | **ORDER** |
| JOHN DOE, et al., ) | |
|       Defendants. ) | |

**THIS MATTER** comes before the Court on a Motion to Dismiss or, Alternatively, for Summary Judgment by Defendant Danny Safrit. (Doc. No. 32). Also pending is Plaintiff's Motion for Preliminary Injunction, Motion for Temporary Restraining Order. See (Doc. Nos. 6, 20).

## I. BACKGROUND

Pro se Plaintiff Brice Moore is a state prisoner currently incarcerated at Marion Correctional Institution in Marion, North Carolina. Plaintiff filed his Complaint on December 27, 2016, while he was incarcerated at Alexander Correctional Institution, alleging that members of the Bloods street gang have put a hit out on his life wherever he is incarcerated in the State of North Carolina and that officials at Alexander Correctional Institution "denie[d] [him] protective custody." (Doc. No. 1 at 2, 5, 8). According to Plaintiff, he has suffered no injury because he "refuses to return to population to let it take place," claiming that he faces danger from both staff members and fellow inmates if returns to the general population in the prison. (Id. at 3).

1

Plaintiff asserts that prison officials would do "whatever it takes to discourage him," including shipping him "to another facility and applying the same harassment" there. (Id.). Plaintiff seeks an "emergency injunction" and "to be placed on protective custody and left on administrative segregation for fear of his life." (Id. at 7-8).

In his motion requesting a preliminary injunction, Plaintiff states that he "keep[s] telling the Administration that the United Blood Nation has ordered a hit" on him but that prison officials have refused to "give [him] protection." (Doc. No. 6 at 1). Plaintiff claims that, without protective custody, he "will most likely be killed, if not luckily to survive the attack that awaits" him. (Id.). Moreover, in support of a renewed request for a temporary restraining order and preliminary injunction, (Doc. No. 20), Plaintiff has attached, among other things, a Declaration in which he claims that he had first requested protective custody from Alexander officials on October 20, 2016, but was thereafter "constantly threaten[ed] that if he did not return to population, that he would receive disciplinary infractions, and would be placed on a control status which [is] I-CON." (Doc. No. 20-1 at ¶¶ 2-3). Plaintiff reports that he had been placed on ICON status when, given the choice between "putting his life into a dangerous situation" by returning to regular population and incurring disciplinary infractions, he chose the disciplinary infractions. (Id. at ¶ 4). Once again, in the Declaration, Plaintiff claims he is "entitled to a temporary restraining order requiring the defendant to arrange for the plaintiff to be placed in Admin Segregation without retaliation . . . ." (Id. at ¶ 6).

In a submission to the Court in response to a Court order, Alexander officials explained that Plaintiff's October 20, 2016, request for protective custody had been investigated but that no evidence was found supporting a need for such protective custody. (Doc. No. 15 at 4). Prison officials explained that Plaintiff had reported to them that an individual named Bruce Jones, who

2

was not incarcerated in a DPS facility and with whom Plaintiff had had problems outside of prison, was "out to get him." (Id. at 7). Plaintiff reported to prison officials that Jones had "connections [to] Bloods and Folk inmates that were after" Plaintiff. (Id. at 7-8). Plaintiff admitted that he had not received any threats from an active North Carolina inmate and had not been physically injured. (Id. at 8). Prison officials concluded that they "found no evidence to support that Inmate Moore needs protective housing. The only person he has alleged making any threats to him is not housed at Alexander Correctional Institution and according to [Plaintiff], he is not an inmate at any facility." (Id. at 8-9). Prison officials further explained that Plaintiff had been placed on Restrictive Housing Control Purpose ("RHCP) on December 15, 2016, after he had incurred multiple disciplinary infractions for refusing subsequent orders to return to protective custody. (Id. at 4).

On April 24, 2017, this Court completed its frivolity review and dismissed all of Plaintiff's claims with the exception of "Plaintiff's Eighth Amendment deliberate indifference claim for prospective injunctive relief" against the Superintendent and Assistant Superintendent of Alexander in their official capacities. (Doc. No. 17). On June 20, 2017, Plaintiff was transferred to Marion Correctional Institution. (Doc. No. 35 at ¶ 13: Corpening Aff.). Upon Plaintiff's arrival there, he was placed in the Rehabilitative Diversion Unit, a unit designed to transition inmates out of a segregation housing environment and provide intensive treatment and programming. (Id. at ¶ 6). On July 28, 2017, Defendant Safrit, who served until recently as the Interim Administrator at Alexander, filed the pending motion to dismiss or, alternatively, for summary judgment. (Doc. No. 32).

In support, Safrit has submitted an affidavit, in which he states that he traced the investigation conducted by Alexander officials in response to Plaintiff's request for protective

3

custody. (Doc. No. 34: Safrit Aff.). Defendant Safrit asserts that the information Plaintiff provided was that an individual named Bruce Jones was associated with the Bloods street gang and was "out to get him," but was not incarcerated at the time and was someone with whom Plaintiff had had problems outside of prison. (Id. at ¶ 6). In addition, Plaintiff denied being physically assaulted, admitted that he had not been pressured to engage in sexual activity, and stated that he was not involved in bartering or trading. (Id.). Plaintiff signed a Protective Control Interview Form documenting those responses. (Id. at ¶ 6 & Ex. A).

Defendant Safrit also asserts that, on April 11, 2017, a Unit Manager at Alexander had received from the Clerk of Court a letter Plaintiff had written, explaining "[i]f they force me to population or modified, because I fear for my life, I am going to kill the first gang member I encounter, or officer." (Id. at ¶ 10 & Ex. B). Six days later, Plaintiff submitted a second request to be placed in protective custody. (Id. at ¶ 11). Once again, Plaintiff was interviewed and, once again, he related that he had been threatened by "Blood members" who were ordered by Bruce Jones to kill him. (Id.). Nevertheless, Alexander officials requested a statement from the facility's Intelligence Officer, who indicated he had no information about any threat or hit issued against Plaintiff by members of the United Blood Nation or any other security threat group. (Id. at ¶ 12).

On August 3, 2017, this Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the motion to dismiss. (Doc. No. 36). Plaintiff filed a response to the motion to dismiss on August 18, 2017. (Doc. No. 37).

**II.     STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) provides that a motion may be dismissed for

4

failure to state a claim upon which relief can be granted.[1]  A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint without resolving contests of fact or the merits of a claim.  Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992), cert. denied, 510 U.S. 828 (1993).  Thus, the Rule 12(b)(6) inquiry is limited to determining if the allegations constitute "a short and plain statement of the claim showing the pleader is entitled to relief" pursuant to Federal Rule of Civil Procedure 8(a)(2).  To survive a defendant's motion to dismiss, factual allegations in the complaint must be sufficient to "raise a right to relief above a speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Thus, a complaint will survive if it contains "enough facts to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  For the purposes of a Rule 12(b)(6) analysis, a claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (quoting Twombly, 550 U.S. at 556).  The Court must draw all reasonable factual inferences in favor of the Plaintiff.  Priority Auto Grp., Inc. v. Ford Motor Credit Co., 757 F.3d 137, 139 (4th Cir. 2014).  In a Rule 12(b)(6) analysis, the Court must

---

[1]  Although the Court has considered statements in affidavits submitted by Safrit and prison official Hubert Corpening, recounting the prison's investigation into Plaintiff's allegations that he was in danger, this does not serve to convert the motion to dismiss into a summary judgment motion.  The Fourth Circuit has recognized that, when ruling on a motion to dismiss, courts may consider documents attached to either the complaint or motion to dismiss without converting the motion to dismiss into a motion for summary judgment "so long as they are integral to the complaint and authentic."  Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).  Moreover, the Fourth Circuit has held that courts are not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," nor should courts "accept as true allegations that contradict matters properly subject to judicial notice or by exhibits."  Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002).  Plaintiff has not challenged the authenticity of the documents submitted by prison officials recounting the prison's investigation into Plaintiff's allegations.

separate facts from legal conclusions, as mere conclusions are not entitled to a presumption of truth. Iqbal, 556 U.S. at 678. Importantly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. However, well-pleaded factual allegations are entitled to a presumption of truth, and the court should determine whether the allegations plausibly give rise to an entitlement to relief. Id. at 679.

III. DISCUSSION

Here, Plaintiff's only remaining claim is "Plaintiff's Eighth Amendment deliberate indifference claim for prospective injunctive relief" against the Superintendent and Assistant Superintendent of Alexander in their official capacities, "based on their refusal to grant him protective custody at the prison." (Doc. No. 17 at 7-8). In support of the motion to dismiss or alternatively for summary judgment, Defendant contends that Plaintiff's recent transfer to Marion Correctional Institution leaves prospective injunctive relief unavailable from either the Superintendent or Assistant Superintendent of Alexander. See Rendleman v. Rouse, 569 F.3d 182, 186 (4th Cir. 2009) ("[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claim for injunctive and declaratory relief with respect to his incarceration there.") (citing Incumaa v. Ozmint, 507 F.3d 281, 286-87 (4th Cir. 2007)).

The Court first agrees with Defendant that Plaintiff's claim for injunctive relief against prison officials at Alexander is moot. As the Court has recognized, however, Plaintiff has alleged in the Complaint that he is in danger regardless of which prison he is incarcerated in while in North Carolina. Moreover, in his response to the motion to dismiss, he continues to assert, in conclusory fashion, that his "life is in danger even here [at Marion]." (Doc. No. 37 at 1-2). However, Plaintiff still does not offer any sworn statement or specific facts supporting his claim that someone outside of prison has put a "hit" on him, and that he is therefore in danger no

6

matter where he is incarcerated. He further asserts in his response that, if the Court is unwilling to appoint counsel to assist him, then he seeks to have the Court "close the case—and I take responsibility myself," and he further states that "[i]f the courts cannot order Marion Correctional to mail out my legal mail, give me back my law books, and to remove me from out of this class that has my life in even greater danger, then just drop[] the suit for the injunction and I'll just take matters into my own hands." (Id. at 2).

The Court interprets Plaintiff's statements in his response to the motion to dismiss as a motion to take a voluntary dismissal, and the Court will grant the motion. Because the Court is construing Plaintiff's response as a motion to take a voluntary dismissal, the dismissal will be without prejudice. Even if the Court were not construing Plaintiff's response as a motion to take a voluntary dismissal, the Court would find that dismissal is appropriate for the reasons stated in Defendant's brief. That is, Plaintiff has claimed, in conclusory fashion without any specific factual allegations, that the threat of a "hit" against him will subject him to harm at any prison in the DPS system. (Doc. No. 1 at 2). Therefore, he claims that he is entitled to be placed in protective custody in any North Carolina prison where he may be incarcerated. As noted, in the Complaint, Plaintiff alleged that his "life has been threatening by gang members with a hit put out on the Plaintiff life. This hit has been issued by Blood members to wherever the Plaintiff is housed on State, to see to the hit is carried out." (Doc. No. 1 at 2). Plaintiff provides the Court, however—either in his original complaint or in any subsequent filings—with no details about when the alleged "hit" was placed on him, who placed it, the acknowledgment by any fellow inmate—whether or not a Blood gang member—of any awareness of its existence, or the reason he believes it was issued. (Doc. No. 1). In fact, without the court-ordered submission by Alexander officials of documentation relating to Plaintiff's request for protective custody and the

7

limited additional details of the purported threat on Plaintiff contained therein, (Doc. No. 15), the Court would be left with nothing other than Plaintiff's unsubstantiated allegation that the hit exists and that it was issued by unspecified members of the Bloods street gang.[2]

The Supreme Court has noted that "the basic requisites of issuance of equitable relief" against State officials are "the likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law." O'Shea v. Littleton, 414 U.S. 488, 502 (1974). Plaintiff has simply failed to provide a sufficient factual or legal basis to justify a conclusion that he warrants protective custody, let alone through the extraordinary relief of a prospective injunction from this Court. From the time he submitted his first request for protective custody until now, Plaintiff has articulated no specific factual allegations to show he is at risk besides his unsubstantiated and unverifiable allegation that a member of the Bloods with whom he had a dispute outside of prison has put a "hit" out on him. While Plaintiff can satisfy one of the O'Shea standards for injunctive relief—the possibility of a substantial irreparable injury if he is attacked or killed—he simply cannot demonstrate that such an injury is even remotely likely, let alone immediately so.

Thus, the Court agrees with Defendant that the Complaint is utterly devoid of sufficient "factual content that allows the court to draw the reasonable inference that" Plaintiff is somehow entitled to prospective injunctive relief. Ashcroft, 556 U.S. at 663 (quoting Twombly, 550 U.S. at 557). As the Supreme Court noted in Ashcroft, a complaint does not suffice to state a facially plausible claim "if it tenders naked assertions devoid of further factual enhancement." Id. (quoting Twombly, 550 U.S. at 557). Moreover, because Plaintiff presumably possesses all of

---

[2] If Plaintiff's allegations are enough to require the North Carolina prisons to place Plaintiff in protective custody, then every North Carolina prisoner will soon have the right to be placed in protective custody if he so wishes—all he would have to do is to claim that some named gang member outside of the prison has put out a hit on his life.

the relevant information regarding the alleged hit and has shared virtually nothing with the Court, this case exemplifies the type wherein the Court "streamlines litigation by dispensing with needless discovery and fact finding."[3] Neitzke, 490 U.S. at 326-327. Accord Smith v. Butler, No. 15-cv-1277, 2016 WL 5395968, at *3 (S.D. Ill. Sept. 27, 2016) (where the inmate sued for injunctive relief based on prison officials' refusal to place him in protective custody, denying injunctive relief where the plaintiff inmate's "allegations concern vague, non-specific threats").

In sum, for the reasons stated herein, the Court will dismiss this action. The dismissal will be without prejudice.

## IV.    CONCLUSION

For the reasons stated herein, Plaintiff's action is dismissed. The dismissal will be without prejudice.

**IT IS, THEREFORE, ORDERED** that:

(1) The Court construes Plaintiff's response as a motion to take a voluntary dismissal and this Court therefore grants the motion. To this extent, Defendant's Motion to Dismiss or, Alternatively, for Summary Judgment, (Doc. No. 32), is **GRANTED**, and Plaintiff's claim is dismissed without prejudice;

(2) Plaintiff's Motion for Preliminary Injunction, Motion for Temporary Restraining Order, (Doc. No. 6), is **DENIED**; and,

---

[3] That is, Plaintiff already has access to all knowledge and facts that he could present in support of his claim, but he has presented nothing more than vague allegations regarding the threats against him. Therefore, there is no need to allow discovery in this case.

(3) The Clerk is directed to terminate this action.

Signed: August 22, 2017

Frank D. Whitney
Chief United States District Judge